UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHAEL ORR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-02023-JRS-MJD |
| ) | |
| RIGGS Nurse, et al., et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Michael Orr is a prisoner currently incarcerated at Miami Correctional Facility, but the events that gave rise to his complaint occurred at Wabash Valley Correctional Facility ("Wabash Valley"). Mr. Orr brought this lawsuit against Nurse Barbara Riggs and Centurion Health of Indiana alleging that they failed to provide him adequate healthcare and maintain policies and practices related to inmates who were hunger striking while he was at Wabash Valley.

Upon screening of Mr. Orr's consolidated complaint, the Court allowed Mr. Orr to proceed with *Monell* claims against Centurion, and Eighth Amendment deliberate indifference claims against Nurse Riggs. Dkt. 54 at 4. The Defendants move for summary judgment contending that Nurse Riggs was not deliberately indifferent to Mr. Orr's medical needs because she exercised her medical judgment related to his hunger strikes, and that Centurion did not maintain any unconstitutional policy or practice related to medical employees' determinations for inmates related to hunger striking. For the reasons that follow, Defendants' amended motion for summary judgment, dkt. [28], is **granted** and final judgment shall be entered.

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Plaintiff failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for

summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Orr and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

During the relevant time period, Mr. Orr was an inmate at Wabash Valley housed in the secure confinement unit ("SCU"). Dkt. 29-1 at 1-5.

Nurse Barbara Riggs was a nurse contracted by Centurion to provide medical services within Wabash Valley. Dkt. 29.

### B. Hunger Strike

Immediately after Mr. Orr's arrival at the facility, he was placed in the SCU and submitted a healthcare request form claiming he was not eating. Dkt. 29-2 at 6.

In September of 2021, Mr. Orr had a history of missing meals at Wabash Valley that eventually led to a hospitalization. Dkt. 29-1 at 8. Although medical staff attempted to educate him on the dangers of hunger strikes and prescribe him Zofran for nausea, his hunger strike continued off and on until Mr. Orr was placed in the infirmary again on September 26 for IV fluids and close observation. *Id.* at 36-40.

A non-party medical doctor at Wabash Valley, Dr. Byrd, assessed Mr. Orr the following day. *Id.* at 41-44. Dr. Byrd noted that Mr. Orr's reports of being too nauseated to eat did not align with his behavior, and that his reported symptoms were potentially attempts to instead get a specific medical diet. *Id.* at 41- 43.

Although Dr. Byrd prescribed Mr. Orr anti-nausea medication, Nurse Riggs noted that Mr. Orr refused to take the anti-nausea medicine when it was offered to him and again refused to eat, claiming he had no appetite. *Id.* at 45-46. Nurse Riggs charted that Mr. Orr seemed "fixated on the diet that he was receiving at the hospital" even though the doctor at the hospital had not recommended any specialized diet. *Id.* at 45. When Mr. Orr asked about potential kidney damage, Nurse Riggs explained that "the longer he starves himself, the more damage he is going to do to his organs." *Id.* at 45-46.

Nurse Riggs informed Mr. Orr that he would be discharged from the infirmary if he continued to refuse all care. *Id.* at 46. Mr. Orr responded that he did not care, and he was not going to eat. *Id.* He was then discharged from the infirmary on September 28. *Id.* at 47. Dr. Byrd noted that Mr. Orr showed no signs of dehydration, and his lab results were within normal limits. *Id.*

Nurse Riggs also noticed that, when offered food/drink items that would "break" his hunger strike, Mr. Orr would decline and ask for alternative food items instead. *Id.* at 50. Nurse Riggs noted that his reasoning for not eating would change frequently and was inconsistent. *Id.* at 17, 41, 45, 51. When Nurse Riggs advised Mr. Orr that the acid reflux was a result of his empty stomach, he agreed to receive a food sack but later refused to accept it from the custody officer. *Id.* at 51.

On March 4, 2022, Mr. Orr stated that he was lightheaded and dizzy because he had not had anything to eat or drink in five days. *Id.* at 69. Mr. Orr claimed that he did not want to eat because he was depressed but was also refusing to take his medications. *Id.* Mr. Orr was admitted to the infirmary and given IV fluids. *Id.* He stated that he "felt better but still wasn't going to eat or drink." *Id.* 28. The following day, Mr. Orr claimed to be having chest pain. *Id.* at 70-73. He had an EKG taken, which returned with normal results. *Id.* at 72, 74. Nurse Riggs advised Mr. Orr that

the pain was likely due to the acid in his stomach. *Id*. Nurse Riggs offered Mr. Orr Boost (a nutritional drink), but he refused. *Id*.

### C. Grievance History

On May 2, 2022, Mr. Orr filed two grievances. Dkt. 29-4 at 1-2. The second grievance claimed that Nurse Riggs dismissed Mr. Orr's claims of chest pain, dizziness, and sweating as symptoms of acid reflux and "refused to check my vital signs or an EKG test and/or at least to provide me some minor pain relief" because he was causing his own problems by refusing to eat. *Id*. at 2. Mr. Orr wrote that Nurse Riggs "did not even instruct me to submit a[n] HCRF" and "could have easily had the security staff take me to the nurse station." *Id*. Mr. Orr claimed that Nurse Riggs made these statements while dispensing medication to him on April 28 and April 29, 2022, respectively. *Id.* at 1-2. Nurse Riggs is not listed on the Nursing Staff Assignment Sheet for April 29, 2022, and did not pass out his medication either day. Dkt. 29-5.

## III.
## Discussion

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty on the states, through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 889 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). "Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need." *Thomas v. Blackard*, 2 F.4th 716, 721–22 (7th Cir. 2021). "Thus, to prevail on a deliberate indifference claim, a plaintiff must show '(1) an objectively serious medical condition to which (2) a state official was deliberately, that is subjectively, indifferent.'" *Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021) (quoting *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 662 (7th Cir. 2016)).

5

The Court assumes for purposes of the summary judgment motion that Mr. Orr's hunger strike was objectively serious. To avoid summary judgment, then, the record must allow a reasonable jury to conclude that the Defendants acted with deliberate indifference—that is, that they "consciously disregarded a serious risk to [Mr. Orr's] health." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 241 (7th Cir. 2021) (cleaned up).

Deliberate indifference requires more than negligence or even objective recklessness. *Id*. Rather, Mr. Orr "must provide evidence that an official actually knew of and disregarded a substantial risk of harm." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016).

"Of course, medical professionals rarely admit that they deliberately opted against the best course of treatment. So in many cases, deliberate indifference must be inferred from the propriety of their actions." *Dean*, 18 F.4th at 241 (internal citations omitted).

The Seventh Circuit has held that deliberate indifference occurs when the defendant:

- renders a treatment decision that departs so substantially "'from accepted professional judgment, practice, or standards as to demonstrate that'" it is not based on judgment at all. *Petties*, 836 F.3d at 729 (quoting *Cole v. Fromm*, 94 F.3d 254, 260 (7th Cir. 1996)).

- refuses "to take instructions from a specialist." *Id.*

- persists "in a course of treatment known to be ineffective." *Id.* at 729–30.

- chooses "an 'easier and less efficacious treatment' without exercising professional judgment." *Id.* at 730 (quoting *Estelle*, 429 U.S. at 104 n.10).

- effects "an inexplicable delay in treatment which serves no penological interest." *Id.*

A. **Nurse Barbara Riggs**

Mr. Orr brings two central Eighth Amendment claims against Nurse Riggs. He contends that Nurse Riggs was deliberately indifferent when 1) after Mr. Orr reported chest pain, dizziness, and weakness during a hunger strike, Nurse Riggs "refused to check my vitals, provide intravenous

6

fluids (if necessary), EKG testing (if necessary), and/or to provide the appropriate referral for me to be seen by a medical doctor, psychologist, or psychiatrist," and 2) that she "failed to engage in the most minimum basic standard care by denying me non-prescription pain relief after I report paralyzing chest pains, dizziness, and weakness that exposed me to a substantial risk of harm." Dkt. 2 ¶¶ 20, 21. Mr. Orr claims Nurse Riggs was dismissive of his complaints because he had caused his own symptoms by refusing to eat, and that he likely only had acid reflux. *Id.* at 17- 18.

    a.  **Medication Rounds**

As to the first of Mr. Orr's complaints against Nurse Riggs, he contends that Nurse Riggs's refusal to treat him occurred on April 29, 2022. Dkt. 2-1 at 1. However, the uncontested evidence shows that Nurse Riggs was not working at the prison on that date, nor did she provide any medication to Mr. Orr from April 27-30 of 2022. Dkt. 29-5. Instead, the nurse that treated Mr. Orr was a non-party, Nurse Tracey. *Id.* "'To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right.'" *Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). For this purpose, each defendant is considered independently. *Id.* As Mr. Orr has presented no evidence that Nurse Riggs was involved in medication pass-outs during this time, his claims related to her alleged failure to treat him must be **dismissed.**

    b.  **Alleged Refusal of Medical Treatment**

Even if Mr. Orr mistakenly alleged that this refusal occurred during the incorrect time frame, the uncontested record shows that when Nurse Riggs did treat Mr. Orr, she exercised medical judgment to render acceptable treatment decisions. Medical professionals may be found to be deliberately indifferent if they persist in an ineffective course of treatment, render a treatment decision that departs from accepted professional judgment, or delay in providing treatment. *Petties*,

7

836 F.3d at 729. The Court examines the totality of Mr. Orr's medical care when evaluating whether Nurse Riggs was deliberately indifferent. *Wilson v. Adams*, 901 F.3d 816, 821 (7th Cir. 2018). "The Eighth Amendment does not guarantee a patient his preferred medication or a pain-free recovery." *Weightman v. O'Brien*, No. 24-1543, 2025 WL 487214, at *3 (7th Cir. Feb. 13, 2025) (citing *Arce v. Wexford Health Sources, Inc.*, 75 F.4th 673, 681 (7th Cir. 2023)). Further, "an inmate is not entitled to demand specific care, and medical professionals may choose from a range of acceptable courses based on prevailing standards in the field." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019) (internal quotation marks and citations omitted)).

The undisputed evidence reflects that Mr. Orr was seen on many occasions over the course of the relevant timeframe by Nurse Riggs, who provided frequent treatment, medications, and evaluations of Mr. Orr's health. Although Mr. Orr contends in his complaint that he should have received EKG testing and pain medication, Nurse Riggs used her medical judgment to evaluate Mr. Orr's condition, and Mr. Orr is not entitled to demand the specific course of treatment he would have preferred. Further, the record also shows that Mr. Orr was provided EKG testing by Nurse Riggs as part of his care. Finally, he has proffered no evidence that Nurse Riggs's treatment decisions were not consistent with accepted professional judgment. Despite Mr. Orr's hunger strike, his vitals were consistently at acceptable levels, and she continued to perform tests and evaluate his condition throughout 2021 and 2022. No reasonable juror could conclude that Nurse Riggs's decisions were not the product of professional judgment. Accordingly, summary judgment for all claims against Nurse Riggs must be **granted.**

### B. Centurion of Indiana

In order to maintain a § 1983 claim against Centurion, Mr. Orr must show that his constitutional rights were violated by a policy or custom of Centurion. *Monell v. Dep't. of Social*

8

*Services*, 436 U.S. 658, 694−95 (1978). "The critical question under *Monell* is whether a policy or custom of a municipal entity caused a constitutional deprivation." *Gonzalez v. McHenry Co., Ill.*, 40 F.4th 824, 829 (7th Cir. 2022). For *Monell* liability to attach, Mr. Orr must first show that he was deprived of a federal right, and then that the deprivation was caused by a Centurion custom or policy or failure to implement a needed policy. *Dean,* 18 F.4th at 235. Further, to the extent that the plaintiff is challenging a facially lawful policy (express or implied), the plaintiff must provide evidence of a "pattern of similar constitutional violations resulting from the policy*." Helbachs Café LLC v. City of Madison*, 46 F.4th 525, 530 (7th Cir. 2022) (cleaned up). If challenging an unconstitutional municipal practice or custom, the plaintiff must show "evidence that the identified practice or custom caused multiple injuries." *Id.* (cleaned up).

Mr. Orr fails on the first prong. Mr. Orr alleged in his complaint that Centurion "had no standardized procedures at the SCU to guide nursing staff exercise of discretion during medication rounds in determining whether a prisoner should be put on Hunger Strike Protocol that required a Nursing evaluation every 24 hours to monitor the risk and reason of starvation whenever a prisoner refused to eat." Dkt. 2 at 3. But as previously established, he has not shown that he was deprived of a federal right with respect to his medical treatment by any individual defendant or that he was subjected to deliberate indifference in his medical care. See *Pyles*, 771 F.3d at 412 (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam)) (stating "Wexford cannot be held liable for damages because there is no underlying constitutional violation."). The defendants have clearly articulated that there was a policy in place related to hunger strike determinations for inmates that created a standardized process for Centurion and nursing staff. Dkts. 29-7, 29-8. And further, Mr. Orr has not addressed any argument related to his *Monell* claims against Centurion in a response, which can be construed as a waiver. Although courts liberally construe a pro se

plaintiff's filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), a complete failure to respond to an argument results in a waiver. *See Martin v. Jones*, 752 F. App'x 368, 369 (7th Cir. 2019), reh'g denied (Mar. 5, 2019) Accordingly, summary judgment must be **granted** for Centurion.

## IV.
## Conclusion

The Defendants' motion to withdraw docket entry #26, dkt. [27] is **GRANTED**. The **clerk is directed** to terminate the motion at dkt. [26]. The Defendants' amended motion for summary judgment is **GRANTED**. Dkt. [28].

Final judgment will issue in a separate entry.

**IT IS SO ORDERED.**

Date: _____12/29/2025_____

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

MICHAEL ORR
133175
MIAMI - CF
MIAMI CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel